# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

Tracy Turner,  )
    Plaintiff,  )
 )
v.  )    1:15cv770 (TSE/IDD)
 )
Officer C. Godwin,  )
    Defendant.  )

## MEMORANDUM OPINION

This matter comes before the Court on the Motion for Summary Judgment of defendant Officer C. Godwin. Tracy Turner, a Virginia inmate acting pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Godwin subjected him to excessive force by threatening to shoot him. For the reasons which follow, defendant's Motion for Summary Judgment must be granted.

### I. Background

#### A. Plaintiff's Allegations

This lawsuit arises from plaintiff's allegation that on October 15, 2014, during his confinement at the Caroline Correctional Center ("CCC"), Officer Godwin pointed a rifle at him and threatened to "blow [his] motherfucking head off." (Doc. 33 at 5) Plaintiff states that he was among a group of inmates who had stopped at a dump to use a Port-A-John when the incident occurred. (Doc. 16 at 5)[1] The others had all used the toilet, but when plaintiff's turn

---

[1] It was recognized in an Order entered on August 1, 2017 (Doc. 33) that the operative complaint in the action is plaintiff's fourth amended complaint. (Doc. 16) In addition, although that iteration of the complaint was filed in care of Harold Clarke, the Director of the Virginia Department of Corrections, it was construed in the Order of August 1 as being brought against Officer Godwin. Plaintiff was allowed an opportunity to file a fifth amended complaint by August 18, 2017 in the event the Court had misconstrued his intention with respect to the defendant (Doc. 33, n. 2) and he

came Officer Godwin told him "to hold it until we got back to the camp." When plaintiff "questioned" Godwin, Godwin allegedly pointed a rifle at him and threatened him. Plaintiff states that his life was endangered by Godwin's action and that as a result he sustained a psychological injury for which he was prescribed two medications. Id. Plaintiff seeks an award of $100,000 in damages.

B. Proceedings

On August 8, 2017, Officer Godwin filed a Motion for Summary Judgment accompanied by a memorandum of law with a supporting exhibit, and provided plaintiff with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Doc. 40-42) On September 8, 2017, Turner filed an opposition to Godwin's motion captioned "Responding to the Defenses." (Doc. 44) Upon review of plaintiff's opposition, it was noted that the document is neither notarized nor sworn, and thus does not subject plaintiff to the penalty of perjury for any misstatements. Accordingly, in deference to plaintiff's pro se status, an Order was entered on November 22, 2017, advising plaintiff that his opposition is insufficient as a matter of law to defeat a summary judgment motion. (Doc. 46) The requirements for a proper response to a motion for summary judgment were carefully explained, and plaintiff was allowed thirty (30) days within which to file a supplemental response to the Motion for Summary Judgment in compliance with those principles. Plaintiff has filed no supplemental response. Accordingly, this matter is now ripe for disposition.

## II. Analysis

A. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

---

did not do so. Therefore, Officer Godwin is the sole defendant in the lawsuit.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts for which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

B. Undisputed Material Facts

In support of his Motion for Summary Judgment, Officer Godwin has submitted an

affidavit in which he sets out the following facts. On October 15, 2014, Godwin was assigned to provide security for an offender work crew at CCC. (Doc. 41, Godwin Aff. ¶ 4). The Virginia Department of Transportation ("VDOT") provides a bus for work crew transportation, and a VDOT foreman operates the bus. The offenders comprising the work crew are patted down and loaded into the bus in the institutional sally port, and when the bus is secure the foreman backs it out of the sally port and the correctional officer providing security gets on. Id.

On the day in question there were 4 or 5 offenders on Godwin's work crew. Id., ¶ 5. When they arrived at the work site the offenders were tasked with clearing fallen trees and trimming and removing brush. As they worked it began to rain. At some point one of the older offenders, C. Faulks, informed Godwin that he had to use the restroom and it was an emergency. Id. Godwin did not feel that the area where the crew was working was suitable for Faulks' use, so the decision was made between Godwin and the VDOT foreman to load the work crew back into the van to drive to an area with a bathroom facility. Id. Eventually, they stopped at a dump site with a Port-a-John, and the VDOT foreman unlocked the back doors of the van so Faulks could exit.

The bus used to transport offender crews is designed so that the offenders ride in a secured area. There is a metal grill barrier between the driver and the offenders and another such barrier between the offenders and the rear door of the bus, which has a locked gate. Offenders enter and exit the bus through the rear, and when they do so both the gate that secures the offenders as well as the exterior rear door of the van itself must be unlocked. The VDOT foreman has the keys to both. Id., ¶¶ 5 - 6.

When the bus carrying plaintiff arrived at the dump site, both Godwin and the VDOT foreman exited the bus and walked behind it. The foreman unlocked the rear doors and Faulks

got out. Godwin assumed a position between 10 and 15 feet behind the bus, where he had a clear view of both the Port-o-John and the remaining offenders. Id., ¶ 6. He was holding a shotgun with both hands and his sidearm was holstered. Id. Faulks took "what seemed to be a long time, possibly 8 to 10 minutes" in the bathroom, and when he came back to the bus a second offender came to the rear of the bus and asked Godwin if he also could use the facility. Id. That offender jumped off the bus and went to the Port-o-John, and Godwin told him to hurry because the group needed to return to the institution. At this time, the VDOT foreman had returned to the bus and was sitting in the driver's seat, even though it is the assigned responsibility of VDOT foremen to control the movement of offenders on and off the work bus. Id. As Godwin was armed he was not permitted to get close to the offenders with his weapon. Id.

While the second offender used the Port-o-John it continued to storm, and Godwin stood at his post in the rain observing the offenders. Id. ¶ 7. At that point a third offender came to the back of the van and started talking with Godwin, and Godwin became "uncomfortable with the situation" because the VDOT foreman was in the driver's seat at the front of the van and its back doors were unsecured. Id. The third offender then exited the van and ran to the restroom without Godwin's permission. Godwin "began worrying and became increasingly stressed that [he] was losing control of the situation." Id. ¶ 7.

When the third offender returned to the bus, plaintiff approached the rear of the vehicle and attempted to exit. Godwin ordered him not to get out because they were leaving. Plaintiff "argued and kept asking why he could not use the restroom." Id. ¶ 7. Godwin became concerned that if an offender exited the bus and tried to run he would have to give chase while the rear of the van was open, which potentially could allow the remaining offenders to escape. His concern was heightened by the fact that the tools used for the work of brush-clearing such as shovels,

rakes and saws were stored in the rear of the bus, in the area between the offender containment door and the exterior door of the vehicle where plaintiff was standing. Id. The unsecured tools would have been accessible to any inmate who moved through the rear of the bus. Id.

Turner continued to argue with Godwin from the rear of the bus, and Godwin again told him not to exit and that he could file a grievance when he got back to CCC. As the weather had continued to deteriorate, Godwin "felt increasingly concerned and nervous that this situation was becoming one of confrontation and potential escape." Id. ¶ 8. He was at the back of the bus alone, he had been standing in the rain for approximately 30 minutes, and he "did not feel that [he] had complete control of the offenders." Id. As Turner continued to argue he moved forward as if to exit the bus, and Godwin "then instructed him that if he exited the bus against orders, I was armed and would respond accordingly." Id. With that, Turner complied with Godwin's orders and returned to his seat in the van. Id. Once Turner returned to his seat, Godwin called for the VDOT foreman to secure the bus, and when the bus was secure he telephoned his supervisor at CCC and informed him of the situation. Id., ¶ 9.

Godwin attests: "At no time did I rack the shotgun or point it at Turner. My sidearm remained holstered. My goal was to keep all offenders on the bus to prevent a violent situation." Id. ¶ 8.

On March 16, 2017, after receiving the appropriate Roseboro notice, plaintiff filed his response to the Motion for Summary Judgment, "Responding to the Defenses." (Doc. 44) As explained above, plaintiff was provided with an opportunity to submit a supplemental response to to the Motion for Summary Judgment, and has failed to do so. As was explained to plaintiff in the Order of November 22, his opposition captioned "Responding to the Defenses" is neither notarized nor sworn, and thus does not subject the author to the penalty of perjury for any

misstatements. Therefore, it is insufficient to defeat the defendant's summary judgment request under any circumstances. Fed. R. Civ. P. 56(e); see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion); Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991) (verification based on personal knowledge or information and belief is insufficient to oppose a motion for summary judgment because it avoids the possibility of perjury). Moreover, even if plaintiff's statement had been signed under penalty of perjury, the non-moving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Even where the non-moving party in such a situation is a pro se prisoner entitled to liberal construction of his pleadings, a "declaration under oath ... is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.C. 1994); see also, Local Civil Rule 7(K)(3) (to defeat a dispositive motion, a pro se party "must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version of the facts by offering affidavits ... or by filing sworn statements...."). Here, because plaintiff's response to the Motion for Summary Judgment is unsworn and in substance amounts to a recapitulation of the complaint, it is insufficient as a matter of law to defeat the defendant's Motion for Summary Judgment.

C. The Claim is Without Merit

At this juncture it is apparent that Officer Godwin is entitled to the summary judgment he seeks. Verbal harassment and abuse, without more, does not rise to the level of a

constitutional claim under §1983. See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). "[T]he use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis of a §1983 claim." Keyes v. City of Albany, 594 F.Supp. 1147 (N.D.N.Y. 1984). Only when a verbal threat is combined with action apparently designed to carry out the threat can it constitute a claim of constitutional dimension. Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978). Here, because Officer Godwin admittedly was armed at the time the incident at issue occurred, an action capable of carrying out his alleged threat was present.

Nonetheless, plaintiff's claim fails because the undisputed facts demonstrate that Godwin did not act wantonly. In determining whether a defendant has used excessive force, the "core judicial inquiry" under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also, Whitley v. Albers, 475 U.S. 312, 320-21 (1986). To determine whether an officer's actions violated the Eighth Amendment, a court must consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force that used; (3) the extent of any perceived threat the application of force was intended to quell; and (4) any efforts that were made to temper the severity of the forceful response. Whitley, 475 U.S. at 321.

Here, given the context in which Officer Godwin's threat occurred, all of the foregoing factors point to the conclusion that it was applied in a good-faith effort to maintain discipline and safety. As Godwin describes in his affidavit, he found himself in a situation that appeared to be spiraling out of control. He was alone guarding the rear of the bus, which was open and through which at least one inmate had already departed the bus without permission. Godwin Aff. ¶ 7. He was aware that unsecured gardening tools that the offenders could use as weapons were located

at the rear of the van. Id. When Godwin denied Turner permission to leave the van to use the restroom, Turner admittedly "questioned" him about the command, and as Turner further admits, Godwin's reference to shooting Turner was made in response to the "questioning." (Doc. 16 at 5) Godwin attests that as Turner was arguing he moved forward as if to exit the bus, and it was then that he advised Turner that if he exited the bus against orders he could be shot. Godwin Aff. ¶ 8.

Under the circumstances in which Godwin found himself, a need to apply force was present. Because the VDOT foreman had retired to the driver's seat, Godwin was alone at the rear of the bus where the door was open. One inmate had already jumped off the bus and gone to the restroom without permission when Turner began to argue with the order not to leave the vehicle. As Godwin states, he was rightfully concerned that the "situation was becoming one of confrontation and potential escape." Id. Under such circumstances, a reasonable use of force to regain control of the situation was warranted.

In addition, the amount of force Godwin used to reassert his authority given the extent of the threat he perceived was appropriate. Godwin was the lone correctional officer on the scene, faced with 4 or 5 inmates who were becoming increasingly disrespectful of his authority. As Turner argued with him and moved as if to exit the bus, he was within reach of unsecured tools including rakes, saws and shovels. Godwin's action of informing Turner that he was armed and that Turner could be shot if he disobeyed was not out of proportion to the extent of the threat that Godwin faced. Significantly, the undisputed evidence establishes that Godwin's statement that he would shoot Turner if Turner disobeyed his command to remain in the bus was restricted to a verbal warning; he did not rack the shotgun he held, nor did he point it at Turner. Id.

As to any efforts that Godwin made to temper the severity of his response, it is apparent

that he could have confronted the prisoner who exited the bus and went to the restroom without permission but he chose not to do so. It was only after Turner failed to respond to his order to return to the prisoner compartment in the van and then began to argue and appeared to make a move toward exiting the bus that he responded by stating that Turner could be shot if he continued to disobey orders. Courts have recognized that the extent of injury suffered by the inmate as the result of an instance of allegedly excessive force is relevant to whether it plausibly could have been thought necessary in the particular situation. Whitley, 475 U.S. at 321. Here, Turner alleges no physical injury as the result of Godwin's action, and his claim to having suffered a "psychological injury" is unsupported. In sum, Godwin's minimal use of force was commensurate with the circumstances that he faced, and was undertaken to serve his stated goal of "keep[ing] all offenders on the bus to prevent a violent situation." Id. ¶ 8. Under these circumstances, no violation of Turner's Eighth Amendment rights occurred.

### III. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment must be granted, and judgment must be entered in his favor. An appropriate Order and judgment shall issue.

Entered this 3rd day of January 2018.

/s/
T. S. Ellis, III
United States District Judge

Alexandria, Virginia